**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT ALLEN WALTON, II,     :

       Plaintiff,        :   CIVIL ACTION NO. 3:25-CV-2461

     v.          :      (JUDGE MANNION)

LACKAWANNA COUNTY,     :

      Defendant.      :

## MEMORANDUM

Presently before the Court is Lackawanna County's ("Defendant") motion to dismiss Robert Allen Walton, II's ("Plaintiff") complaint for failure to state a claim upon which relief can be granted. (**Doc. 4**). For the reasons set forth below, Defendant's motion will be **DENIED.**

## I.    BACKGROUND

This action arises out of alleged violations of the United States Constitution brought pursuant to 42 U.S.C. §1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. §794, *et seq.* (Doc. 1). On February 2, 2024, Plaintiff was committed to the Lackawanna County Prison ("LCP") for a probation violation. (Doc. 1, ¶8). Prior to his incarceration, Plaintiff was diagnosed with keratoconus, which is a medical condition that causes blurry vision. *Id.*, ¶9. According to Plaintiff, the only treatment for keratoconus is the "use of rigid,

gas permeable contact lenses, or 'scleral lenses[,]'" which "must be removed each night with the use of a small, plunger-like device made of silicone." *Id.*, ¶¶10-13. Plaintiff states that the "[f]ailure to remove the scleral lenses each day may result in an increased risk of infection and damage to the cornea[.]" *Id.*

Prior to his time of incarceration, Plaintiff had been using scleral lenses to treat his condition. *Id.*, ¶14. According to Plaintiff, when he reported to LCP, he advised the staff and medical personnel about his condition and the plunger device required to remove his scleral lenses each day. *Id.*, ¶¶15-16. During his initial intake, Plaintiff underwent an eye examination, whereupon LCP medical personnel ordered artificial tears eye drops to be administered to Plaintiff each morning and night as needed, however, Plaintiff did not receive access to the eye drops until approximately forty days into his incarceration. *Id.*, ¶19.

According to Plaintiff, on February 10, 2024, Plaintiff complained about left eye itchiness during a visit with a mental health provider at LCP—the provider documented that Plaintiff had not yet received his scleral lenses but likely meant that he had not yet received his scleral lens *remover*. *Id.*, ¶20. The same day, Plaintiff was given an urgent medical referral for right eye erythema and drainage. *Id.*, ¶21.

- 2 -

According to Plaintiff, Defendant did not have scleral lens removals on its list of approved medical devices and used that basis to deny inmates the necessary tool to preserve their eyesight. *Id.,* ¶24. Plaintiff alleges that numerous times, his requests for the device were ignored, and that when friends attempted to deliver the device for Plaintiff's use, LCP staff stated that "if the plungers were not on the commissary list, then [Plaintiff] could not have them." *Id.,* ¶¶22, 25, 28. Additionally, on February 16, 2024, Plaintiff submitted a medical request slip for a mattress and a scleral contact lens remover; in LCP's February 18, 2024 response, Plaintiff was told why he was denied the mattress, but there was no answer about the scleral lens remover. *Id.,* ¶¶29-30.

Plaintiff alleges that Defendant "has a pattern of denying inmates access to scleral lens removers, a medical necessity for individuals with keratoconus." *Id.,* ¶33. In *United States v. Madison*, No. 3:22-CR-160 (M.D.Pa. June 8, 2022), (Doc. 21), Madison needed to request contact care, including removers, due to an injury he was sustaining from his contacts. Plaintiff avers that after Madison turned to the Court in a state of emergency, LCP provided Madison with the scleral lens removers. (Doc. 1, ¶¶34-36).

Plaintiff was without scleral lens removers for nearly forty days. *Id.,* ¶38. During such time, Plaintiff avers that he was unable to remove the

lenses, and experienced significant pain and discomfort. *Id.*, ¶39. Ultimately, LCP provided Plaintiff with a scleral lens remover, and the artificial tears eye drops which were ordered at his intake. *Id.*, ¶42. When LCP staff provided Plaintiff with the remover, they returned the majority of the request slips he had submitted. *Id.*, ¶43. Plaintiff needed multiple attempts to remove the lenses from his eyes due to their adhesion to his eyeballs. *Id.*, ¶44. He took two days without wearing the lenses due to the pain he was experiencing. *Id.*, ¶46. Plaintiff was released from LCP on March 19, 2024. *Id.*, ¶47. Upon his release, Plaintiff visited his eye doctor, who diagnosed Plaintiff with corneal neovascularization. *Id.*, ¶49.

Plaintiff commenced the underlying action on December 18, 2025. (Doc. 1). On January 23, 2026, Defendant filed the immediate motion to dismiss and brief in support. (Docs. 4, 5). Plaintiff filed his brief in opposition on February 4, 2026. (Doc. 7). Defendant's period to file a reply brief has lapsed. *See* M.D.Pa.R. 7.7. Accordingly, this matter is ripe for disposition.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-

unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" does not comply with Rule 8. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The moving party bears the burden of showing that no claim has been stated, and dismissal is appropriate only if, accepting all the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

As noted above, the Court at this stage accepts the complaint's factual allegations as true. This tenet "is inapplicable to legal conclusions." *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The federal pleading standard requires that district courts conduct a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal citations and quotations omitted).

In considering a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the Court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,1261 (3d Cir. 1994).

## III.    DISCUSSION

### A. Count I: Denial of Medical Care Pursuant to 42 U.S.C. §1983

Count I of Plaintiff's complaint is brought under 42 U.S.C. §1983. "[§]1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or

immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). By itself, §1983 does not create any rights, "but provides a remedy for violations of those rights created by the Constitution or federal law." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 907 (3d Cir. 1997) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)). "The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)).

"[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). One way for a plaintiff to present a claim against a municipality is to assert "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.* Another way for a plaintiff to present a claim against a municipality is to assert that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)). Plaintiff asserts both types of claims against Defendant. The Court addresses each in turn.

### a. Policy (*Monell*) Claim

A *Monell* claim under §1983 is a claim against a municipality or other similar entity. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[A] local government may . . . be sued . . . when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under §1983."). To establish a claim against a municipal entity under the policy strand of liability, Plaintiff must show "that 'a [local] government's policy or custom . . . inflicted the injury' in question." *Evans v. Columbia Cnty.*, 711 F.Supp.3d 256, 310 (M.D.Pa. 2024) (internal citations omitted). Namely:

> [A] policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict . . . "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." . . . A plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was" . . . Further, "a plaintiff [asserting] that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom" . . . And whether asserting a policy or a custom, "a plaintiff must show that an official who has the power to make

- 9 -

> policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."

*Evans,* 711 F.Supp.3d at 310 (internal citations omitted). Moreover:

> Showing a policy or custom is not enough . . . "A plaintiff must also [show] that the policy or custom was the 'proximate cause' of his injuries" . . . "He may do so by "demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges" . . . "This is done for a custom if [the plaintiff] demonstrates that [the municipality] had knowledge of 'similar unlawful conduct in the past, ... failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury.'"

*Id.*

Here, Plaintiff alleges that Defendant "had policies and/or practices that resulted in the violation of [Plaintiff's] rights under the Fourteenth and/or Eighth Amendments." (Doc. 1, ¶58). He goes on to state that Defendant had policies and/or customs which involved "failing to provide adequate medical attention for inmates in immediate need of the same, insufficient guidelines for approval of medical devices for use within the LCP, and/or denying inmates necessary medical devices." *Id.*, ¶59. In particular, Plaintiff avers that Defendant had a policy which only allowed inmates access to medical

- 10 -

devices or supplies on a pre-approved list without consideration of "an inmate's individualized and personal medical needs." *Id.*, ¶61.

Plaintiff provided some factual support for these aversions, stating that "on two separate occasions, [Plaintiff's] friends attempted to deliver the necessary plungers to LCP for his use; however[,] [Defendant's] staff turned them away, stating that, if the plungers were not on the commissary list, then [Plaintiff] could not have them." *Id.*, ¶25. Plaintiff also refers to the experience of another inmate, who made repeated requests for scleral contact removers and LCP staff denied his requests until the Court intervened. *Id.*, ¶¶34-38. These facts support a plausible claim that Defendant maintained policies or customs which involved blanket denials of inmate requests for certain medical devices. *Iqbal*, 556 U.S. at 678.

The question then becomes whether Plaintiff has provided sufficient facts to support a plausible claim that the policy or custom led to his injury. *Evans,* 711 F.Supp.3d at 310. Here, Plaintiff avers that but-for Defendant's policy, he would have been able to remove the scleral lenses from his eyes. (Doc. 1, ¶39). Ultimately, because his contacts were stuck to his eyeballs for nearly forty days, Plaintiff was diagnosed with corneal neovascularization. *Id.,* ¶49. These factual averments, if true, support a plausible claim that Plaintiff suffered an injury due to Defendant's policy of denying medical

- 11 -

devices to inmates if such devices were not listed on a pre-approved list. *Iqbal*, 556 U.S. at 678. Therefore, to the extent that Defendant's motion to dismiss seeks to dismiss Plaintiff's §1983 *Monell* claim, it is denied.

### b. Deliberate Indifference Claim

The Court now turns to Plaintiff's §1983 deliberate indifference claim. To make a *prima facie* case of Eighth Amendment cruel and unusual punishment based on the denial of or deliberate indifference to medical care, as alleged here, "a plaintiff must show that '(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff.'" *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023).

Moreover:

> [A] plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with a "sufficiently culpable state of mind." . . . The "deliberate indifference to serious medical needs" standards is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care.

*Ayers v. Bradford Cnty.*, No. 1:08-CV-1148, 2009 WL 801867, at *3 (M.D.Pa. Mar. 25, 2009).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that prison officials violated the Eighth Amendment when they acted deliberately indifferent to a prisoner's serious medical needs by "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *Pearson*, 850 F.3d at 534 (quoting *Estelle*, 429 U.S. at 104-05). "This . . . does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Estelle*, 429 U.S. at 105. Mere negligence does not violate the Eighth Amendment. *Id.* at 106.

The issue whether Plaintiff pleaded sufficient facts to show a plausible claim that: (1) Plaintiff's keratoconus is, objectively, a sufficiently serious medical condition that requires the use of a scleral contact remover; (2) that Defendant was deliberately indifferent to Plaintiff's need for a scleral contact remover; and (3) the deliberate indifference caused harm to Plaintiff. *Durham*, 82 F.4th at 229. The Court answers in the affirmative.

- 13 -

"A medical need is serious if it 'has been diagnosed by a physician as requiring treatment' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Evans,* 711 F.Supp.3d at 276 (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). Additionally, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the [E]ighth [A]mendment." *Evans,* 711 F.Supp.3d at 276 (internal citations omitted).

Here, Plaintiff has a diagnosis of keratoconus, which is a condition that causes blurry vision. (Doc. 1, ¶9). Plaintiff avers that the only way to treat his condition is by the use of "rigid, gas permeable contact lenses, or 'scleral lenses.'" *Id.*, ¶10. Further, Plaintiff states that "[t]o avoid damage to the eye, scleral lenses must be removed each night with the use of a small, plunger-like device made of silicone . . . [f]ailure to remove scleral lenses each day may result in an increased risk of infection and damage to the cornea[.]" *Id.*, ¶¶13-14. Though this Court has not contemplated whether keratoconus is a serious medical condition, other jurisdictions have found that it is. *See Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 459 (7th Cir. 2020) ("'[P]reexisting and underlying eye issues,' including . . . keratoconus, 'are

- 14 -

objectively serious medical concerns'" (internal citations omitted)); *see also Williams v. Luther*, No. 3:20-CV-30-KT, 2024 WL 3572344, at *7 (W.D.Pa. June 25, 2024) ("The parties do not dispute that the eye condition, keratoconus, was serious."). The Court therefore holds that Plaintiff has pleaded sufficient facts to show that his medical condition is serious. *Evans*, 711 F.Supp.3d at 276.

The next inquiry is whether Plaintiff pleaded sufficient facts to show that Defendant acted with deliberate indifference. *Id.* As mentioned, deliberate indifference under the Eighth Amendment is a subjective standard. *Ayers*, 2009 WL 801867, at *3, *supra*. "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Evans*, 711 F.Supp.3d at 276 (quoting *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009)). "To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it." *Evans*, 711 F.Supp.3d at 276 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

- 15 -

"But to demonstrate a defendant's deliberate indifference an inmate need not show that the defendant intentionally sought to cause the inmate harm or acted with knowledge that harm to the inmate probably would result from the defendant's act or failure to act." *Evans*, 711 F.Supp.3d at 300 (quoting *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)). "Though purposeful conduct would show at least deliberate indifference, an inmate satisfies her burden to make that showing if she demonstrates that the defendant acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm." *Id.* "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm." *Id.*

Here, Plaintiff has alleged that on numerous occasions, he advised LCP staff of his diagnosis, use of scleral lenses, and need for a scleral lens remover. (Doc. 1, ¶¶15-35). Plaintiff alleges that these requests were ignored or outright denied. *Id.*, ¶¶25, 27-31, 35, 38. Plaintiff further states that when LCP finally provided him with the scleral lens remover, it also gave him the majority of the request slips he submitted. *Id.*, ¶43. Plaintiff avers that Defendant was placed on notice of the risk of harm because Plaintiff was treated for eye erythema and drainage while LCP allegedly continued to deny

the scleral eye remover. *Id.*, ¶¶21-22. Moreover, Plaintiff draws the Court's attention to another case in which an inmate suffered from an injury due to LCP's alleged failure to provide the inmate with appropriate contact lens equipment, including a scleral lens remover. (Doc. 1, ¶34); *see also United States v. Madison*, No. 3:22-CR-160 (M.D.Pa. June 8, 2022) (Doc. 21). These facts, taken as true, amount to a plausible claim that Defendant acted with deliberate indifference toward Plaintiff's medical diagnosis. *Evans*, 711 F.Supp.3d at 276.

Finally, the Court considers whether Plaintiff pleaded facts sufficient to make a plausible claim that Defendant's alleged deliberate indifference caused harm to Plaintiff. *Durham*, 82 F.4th at 229. Here, Plaintiff avers that immediately after he removed the scleral lenses, he left them out for two days because of the pain and damage. (Doc. 1, ¶46). Moreover, upon his release from LCP, Plaintiff visited his optometrist, who purportedly diagnosed him with corneal neovascularization as a result of the inability to remove the scleral lenses from his eyes for forty days. *Id.*, ¶49. Plaintiff alleges that "as a result of the injuries he sustained due to the deliberate indifference of [Defendant], [Plaintiff] has suffered extreme pain and emotional distress; worsening vision; an increased risk of the need for a corneal transplant; and an increased risk of vision loss." *Id.*, ¶53.

- 17 -

Plaintiff has pleaded sufficient facts to make a plausible deliberate indifference §1983 claim. To the extent Defendant's motion seeks the dismissal of Plaintiff's claim that Defendant was deliberately indifferent to Plaintiff's medical needs, the motion is denied.

**B. Counts II and III: Disability Law Claims**

Counts II and III of Plaintiff's complaint assert claims against Defendant based on federal disability law: Count II is pursuant to Title II of the ADA and Count III is pursuant to the RA. (Doc. 1 at 11, 14). Regarding the two:

> For decades, the ADA and the RA have served as "twin pillars of federal disability discrimination law," working in tandem to "secure the rights of individuals with disabilities to independence and full inclusion in American society" . . . Functionally, the ADA and the RA impose the "same prohibition," but they cover different entities . . . Along with proscribing discriminatory animus, both statutes also impose on covered entities an affirmative obligation to make "reasonable accommodations" for persons with disabilities so that they can meaningfully access their programs, services, and activities . . . As then-Judge Jackson has observed, this duty is at its apex in the prison context "because inmates necessarily rely totally upon [prisons] for all of their needs while in custody and do not have the freedom to obtain such services (or the accommodations that permit them to access those services) elsewhere."

- 18 -

*Montanez v. Price*, 154 F.4th 127, 144 (3d Cir. 2025) (internal citations omitted).

Except for causation, the substantive standards for determining liability under the ADA and the RA are identical, and the same remedies are available under both Acts. *Id.* (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014); 29 U.S.C. §794(a) (authorizing injunctive relief and money damages); 42 U.S.C. §12133 (same)). To state a claim for disability-based discrimination, Plaintiff must allege that: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or other activities for which a public entity is responsible, or was otherwise subjected to discrimination by a public entity; (4) by reason of his disability." *Montanez v. Price*, 154 F.4th 127, 146 (3d Cir. 2025) (citing *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018)).

Here, Plaintiff has easily pleaded sufficient facts to support a plausible claim as to the first two elements. Plaintiff, like all prisoners, is a qualified individual covered by the ADA and RA. *Montanez*, 154 F.4th at 146. A "disability" is any "physical or mental impairment that substantially limits one or more major life activities[.]" *Id.* (quoting 42 U.S.C. §12102(1)(A)). Undoubtedly, Plaintiff's keratoconus, particularly the symptom of blurry

vision, substantially interferes with major life activities such as seeing, reading, writing, and performing manual tasks. *See* 28 C.F.R. §35.108(c)(1)(i); *see also Medina v. Cty. of New York*, No. 20-3763, 2023 WL 6276682, at *7 (S.D.N.Y. Sept. 26, 2023) ("Plaintiff's keratoconus is a disability because it substantially interferes with his ability to see, read, and write, which are all expressly defined as major life activities under the regulations implementing the ADA.").

Regarding the third element, the phrases "service, program, or activity" of Title II of the ADA and "program and activity" of §504 of the RA are "extremely broad in scope and include[] anything a public entity does." *Montanez*, 154 F.4th at 147 (internal citations omitted). This includes healthcare and providing necessities for hygiene. *See id.* Therefore, the activity of providing Plaintiff with appropriate medical necessities, such as a scleral lens remover, could be plausibly construed as an activity from which Plaintiff was excluded. *Id.*

Finally, the Court considers whether Plaintiff pleaded sufficient facts to establish the final element. "A plaintiff can meet the fourth element of a prima facie case—discrimination 'by reason of his disability'—by showing invidious discrimination or a failure to provide reasonable accommodations." *Id.* at 148 (quoting *Haberle*, 885 F.3d at 179-80). The duty is triggered when a disabled

person's need for an accommodation because known because (1) he requested the accommodation, or (2) his disability and need for an accommodation are open and apparent. *Id.* (internal citations omitted). Here, Plaintiff has pleaded, on multiple occasions, that he requested a device to accommodate his keratoconus diagnosis. (Doc. 1, ¶¶15, 25, 27-31).

The Court finds that Plaintiff has pleaded facts sufficient to support a plausible claim of discrimination under the ADA and RA. Any dismissal of Plaintiff's claims pursuant to the ADA and RA would be clear error. Thus, Defendant's motion, to the extent it seeks dismissal from Counts II and III from Plaintiff's complaint, is denied.

## IV. CONCLUSION

The Court concludes that Plaintiff has stated plausible claims upon which relief can be granted. Therefore, Defendant's motion to dismiss will be **DENIED** in its entirety. An appropriate order shall follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 7, 2026**
25-2461-01

- 21 -